1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                         **DISTRICT OF ARIZONA**
8
9
**Nelda Majors, *et al.*,**                    )
10                                              )
                      **Plaintiffs,**           )        **2:14-cv-00518 JWS**
11                                              )
12          **vs.**                             )        **ORDER AND OPINION**
                                                )
13  **Michael K. Jeanes, in his official capacity** )     **[Re: Motion at Docket 64]**
    **as Clerk of the Superior Court of**        )
14  **Maricopa County, Arizona, *et al.*,**      )
                                                )
15                    **Defendants.**           )
16  _____ )

17

18                    I.  **MOTION PRESENTED**

19          At docket 64, plaintiff Fred McQuire ("McQuire") asks for a temporary restraining

20  order which would require defendants to recognize the legitimacy of his California

21  marriage to his recently deceased partner George Martinez ("Martinez"), require

22  defendant Will Humble ("Humble") to prepare and issue a death certificate showing that

23  Martinez was married to McQuire when he died, and require Humble to issue any

24  necessary directives to health departments, funeral homes, physicians, medical

25  examiners, and anyone else involved in preparing the death certificate to comply with

26  the requirement to show that Martinez was married to McQuire at the time of his death.

27

28

Defendants' response is at docket 70.  McQuire replies at docket 73.  Oral argument was heard on September 12, 2014.

## II.  BACKGROUND

McQuire and Martinez were a gay couple who lived together for many years in Green Valley, Arizona, until the time of Martinez's death.  They are among the nineteen plaintiffs who filed the case at bar to challenge Arizona's constitutional and statutory provisions which ban same-sex marriage in Arizona and prevent Arizona from recognizing same-sex marriages lawfully entered in other states.[1]  The defendants named in the current complaint[2] are Michael K. Jeanes, sued in his official capacity as Clerk of the Superior Court of Maricopa County; Will Humble, sued in his official capacity as Director of Arizona's Department of Health Services; and David Raber, sued in his official capacity as Director of the Arizona Department of Revenue.

Plaintiffs contend—and defendants deny—that the challenged provisions of Arizona law deny them the equal protection of the laws required by the Fourteenth Amendment.  In addition, plaintiffs contend—and defendants deny—that the challenged laws deny plaintiffs the substantive due process of law required by the Fourteenth Amendment.

## III.  STANDARD OF REVIEW

McQuire asks the court to issue an injunction commanding defendant Humble and his agents to prepare, issue, and accept a death certificate for Martinez stating he

---

[1] ARIZ. CONST. art. XXX, § 1; A.R.S. §§ 25-101(C), 25-112(A), and 25-125(A).

[2] Second Amended Complaint for Injunctive and Declaratory Relief at doc. 50.

1
2
3
4
5
6
7

was married and naming McQuire as his spouse.[3]  Injunctive relief is an extraordinary

remedy[4] which is not routinely granted.[5]  The Ninth Circuit has explained that to obtain

injunctive relief a plaintiff must show four things:  First, he is likely to succeed on the

merits; second, he is likely to suffer irreparable harm without the relief sought; third, a

balancing of the equities tips toward him; and fourth, the public interest favors issuance

of an injunction.[6]

8
9

## IV.  DISCUSSION

**A. Preliminary Consideration**

10
11
12
13
14
15
16
17
18

Defendants contend that the Supreme Court's decision in *Baker v. Nelson*[7]

effectively decided the claim upon which McQuire's motion rests—that a state violates

the United States Constitution when it refuses to sanction same-sex marriages.[8]

Defendants misapprehend the current significance of *Baker*.  There, 42 years ago the

Court said that a challenge to a Minnesota law defining marriage as between a man

and a woman did not raise a substantial federal question.  Even such a terse

pronouncement binds the lower federal courts unless subsequent developments in the

19
20
21
22
23
24
25
26
27
28

[3]Requests for temporary restraining orders are governed by the same standards that govern the issuance of a preliminary injunction.  *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.,* 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002); *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995).

[4]*See United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 496 (2001).

[5]*Martin v. O'Grady*, 783 F.Supp. 1191, 1195 (N.D. Ill. 1990).

[6]*League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 759 (9th Cir. 2014).

[7]409 U.S. 810 (1972).

[8]Doc. 70 at 3.

Supreme Court's own jurisprudence establish that the pronouncement no longer comports with the Supreme Court's view of an issue.[9]

The Supreme Court's decisions in *Romer v. Evans*,[10] and *Lawrence v. Texas*,[11] cast doubt on the proposition that *Baker* commands lower courts to treat challenges to same-sex marriage prohibitions as matters not raising a substantial federal question. The Court's more recent decision in *United States v. Windsor*[12] eliminates any uncertainty.  The majority opinion striking down the federal Defense of Marriage Act ("DOMA") holds that DOMA's definition of marriage as between members of different genders for purposes of all federal laws required the Supreme Court "to address whether the resulting injury and indignity (to same-sex couples) is a deprivation of an essential part of the liberty protected by the Fifth Amendment."[13]  Less than two weeks ago the Seventh Circuit joined numerous other federal courts in recognizing that *Baker* does not foreclose consideration of claims challenging the constitutionality of state laws forbidding same-sex marriages.[14]  *Baker* is not an impediment to consideration of McQuire's claim.

---

[9]*See, Hicks v. Miranda,* 422 U.S. 332, 344 (1975) (recognizing that the Court's "doctrinal development" may vitiate the binding nature of a decision like *Baker*.)

[10]517 U.S. 620 (1996).

[11]539 U.S. 558 (2003).

[12]133 S.Ct. 2675 (2013).

[13]*Id.* at 2692.

[14]*Baskin v. Bogan*, __ F.3d __, Nos. 14–2386, 14–2387, 14–2388, 14–2526, 2014 WL 4359059, at *7 (7th Cir. Sept. 4, 2014).

**B. Likelihood of Success on the Merits**

Within the past year, many federal courts have held that state laws forbidding same-sex marriage violate the United States Constitution.  The most recent circuit court decision is the Seventh Circuit's decision in *Baskin v. Bogan*,[15] which held that the prohibitions on same-sex marriages in Indiana and Wisconsin violated the Equal Protection clause of the Fourteenth Amendment.  Just weeks prior to *Baskin*, the Fourth Circuit held in *Bostic v. Schaefer*[16] that Virginia's prohibition on same-sex marriages violated both the Equal Protection and Due Process clauses of the Fourteenth Amendment.  Prior to that, the Tenth Circuit held in *Kitchen v. Herbert*[17] that Utah's prohibition of same-sex marriages violated the Constitution.  No other circuit courts have yet addressed the issue.  Numerous district courts have also held that state prohibitions on same-sex marriage violate the Constitution.[18]

---

[15]*Id.* at *21 (holding Indiana and Wisconsin prohibitions on same-sex marriage violated equal protection).

[16]__ F. 3d __, Nos. 14–1167, 14–1169, 14–1173, 2014 WL 3702493, at *16 (4th Cir. July 28, 2014).

[17]755 F.3d 1193, 1229–30 (10th Cir. 2014).

[18]*Geiger v. Kitzhaber*, 994 F. Supp. 2d 1128, 1147–48 (D. Or. 2014); *Whitewood v. Wolf*, 992 F. Supp. 2d 410, 431 (M.D. Pa. 2014); *Love v. Beshear*, 989 F. Supp. 2d 536, 550 (W.D. Ky. 2014); *Baskin v.* Bogan, __ F. Supp. 2d __, Nos. 1:14–cv–00355–RLY–TAB, 1:14–cv–00404–RLY–TAB, 1:14–cv–00406–RLY–MJD, 2014 WL 2884868, at *14 (S.D. Ind. June 25, 2014); *Wolf v. Walker*, 986 F. Supp. 2d 982, 1026–28 (W.D. Wisc. 2014); *Latta v. Otter*, __ F. Supp. 2d __, No. 1:13–cv–00482–CWD, 2014 WL 1909999, at *28 (D. Idaho May 13, 2014); *DeBoer v. Snyder*, 973 F. Supp. 2d 757, 775 (E.D. Mich. 2014); *DeLeon v. Perry*, 975 F. Supp. 2d 632, 665–66 (W.D. Tex. 2014) (granting preliminary injunction, but staying same pending appeal).

Only a Nevada district court and two Louisiana district courts have upheld state bans.[19]   None of these decisions are persuasive.   The judges in Nevada and the more recent Louisiana case applied rational basis review to the plaintiffs' equal protection challenges.   However, the Ninth Circuit's decision in *SmithKline Beecham v. Abbott Laboratories*,[20] holds that discrimination based on sexual orientation must be evaluated using a heightened standard of review.[21]   Defendants contend that *SmithKline Beecham* is inapposite for four reasons.

First, defendants argue Arizona's man/woman marriage laws do not discriminate on the basis of sexual orientation.[22]   Yet, the reason why couples such as McQuire and Martinez may not marry is precisely because of their sexual orientation.   This argument lacks merit.

Second, defendants contend Arizona's man/woman marriage laws were not intended to discriminate against same-sex couples.[23]   Accepting that as true, it does not alter the fact that the laws do discriminate.   Evidence of malignant intent might support a higher standard of review, but defendants do not explain why its absence necessarily forecloses use of a higher standard.

---

[19]*Robicheaux v. Caldwell*, ___ F. Supp. 2d ___, Nos. 13-5090, 14-97, 14-327, 2014 WL 4347099, at *12 (E.D. La. Sept. 3, 2014) (applying rational basis review standard); *Sevcik v. Sandoval*, 911 F. Supp. 2d 996, 1018 (D. Nev. 2012) (applying rational basis review standard); *Merritt v. Attorney General*, No. 13-00215-BAJ-SCR, 2013 WL 6044329, at *1 (M.D. La. Nov. 14, 2013) (district court adopted recommendation of a magistrate judge).

[20]740 F.3d 471 (9th Cir. 2014).

[21]*Id.* at 484.

[22]Doc. 70 at 4.

[23]*Id.*

-6-

Third, defendants argue that because the marriage laws in question are based upon a biological difference which reflects society's interest in the capacity to create children, a higher standard of review should not apply.[24]  This argument is circular—there is a rational basis for the distinction, ergo rational basis review applies. Whether marriage laws which discriminate between heterosexuals and homosexuals should be subject to a higher level of scrutiny depends on whether a fundamental right or a suspect classification is involved,[25] not whether the state can offer a rational basis for the distinction.[26]  Moreover, there is circuit court authority for the proposition that marriage laws which discriminate between heterosexual couples and homosexual couples infringe a fundamental right.[27]

Fourth, defendants argue that *SmithKline Beecham* does not reach so far as the circumstances before this court because it relied on the Supreme Court's decision in *Windsor*, which did not explicitly establish a heightened standard of review for all cases involving laws with a disparate impact on same-sex couples.[28]  The argument is not persuasive.  To begin with, the issue here was not before the court in *Windsor*, so the Court did not need to explain how far its analysis might reach.  Second, if one is to infer the reach of the *Windsor* analysis, it is at least as reasonable to infer that *Windsor* does

---

[24]*Id.*

[25]*Am. Tower Corp. v. City of San Diego*, ___ F.3d ___, Nos. 11–56766, 11–56767, 11–56861, and 11–56862, 2014 WL 3953765, at *17 (9th Cir. Aug. 14, 2014).

[26]*See Kitchen,* 755 F.3d at 1218.

[27]*Bostic*, 2014 WL 3702493 at *8–10; *Kitchen*, 755 F.3d at 1218.

[28]Doc. 70 at 11–12.

-7-

imply use of a heightened standard of review in the case before this court as it is to infer the opposite.  Finally, it is important to note that *SmithKline Beecham* relied on *Windsor* to reverse Ninth Circuit precedent which had held that rational basis review applied, and broadly declared, "there can no longer be any question that gays and lesbians are no longer a group or class of individuals normally subject to rational basis review."[29]

The court now turns to the other Louisiana district court case which upheld a state law forbidding same-sex marriage.  As relevant to the issue at hand, the court relied on a single proposition—that *Baker v. Nelson* was controlling.[30]  As explained in the previous subsection of this order, *Baker* is no longer controlling.

The remainder of defendants' opposition essentially details its arguments on the merits.  While the court is not presently passing on the merits of those arguments, for present purposes it suffices to say that in the persuasive decisions by other federal courts set out above, they have all been found wanting.  Given the wealth of case law holding that state prohibitions on same-sex marriage violate the Constitution, and the absence of any persuasive case law to the contrary, the court concludes that McQuire is likely to prevail on the merits.

**C.  Likelihood of Irreparable Harm**

McQuire identifies three types of irreparable harm he will suffer absent injunctive relief: (1) he will lose the dignity associated with his marriage and suffer that loss in the

---

[29]*SmithKline Beecham*, 740 F.3d at 484 (internal quotation marks omitted) (quoting *J.E.B. v. Alabama ex rel T.B.*, 511 U.S. 114, 143 (1994) .

[30]*Merritt*, 2013 WL 6044329 at *2.

midst of his grieving; (2) he will lose significant financial benefits; and (3) he will suffer a

violation of his constitutional rights.

### 1.    Emotional harm caused by the loss of dignity and status

McQuire argues that if he is not listed as a spouse on Martinez's death

certificate, he will lose the dignity associated with their marriage and suffer that loss in

the midst of his grieving.  The Supreme Court has recognized that the right to marry

confers on the individuals able to exercise the right "a dignity and a status of immense

import."[31]  McQuire likely faces irreparable emotional harm by being denied this dignity

and status as he grieves Martinez's death.

Defendants deny McQuire's allegation that the marriage laws deprive him of the

dignity and status conferred by his marriage to Martinez.  Defendants rely on the fact

that the Supreme Court stayed the effect of three lower court decisions in *Herbert v.*

*Kitchen*,[32] *Herbert v. Evans*,[33] and *McQuigg v. Bostic*.[34]  The cases subject to these

stays involve lengthy opinions.  The Court's stays shed no light on what issue, if any,

will deserve review in the Supreme Court.  In sum, it is not possible to say that the stays

disclose anything about the legitimacy of McQuire's claim for loss of dignity.  On the

other hand, the Court's decision in *Windsor* expressly recognizes that where it is

permitted, the marital state of same-sex couples is invested with "a dignity and status of

---

[31] *Windsor*, 133 S.Ct. at 2692

[32] 134 S.Ct. 893 (2014).

[33] No. 14A65, 2014 WL 3557112 (U.S. July 18, 2014).

[34] No. 14A196, 2014 WL 4096232 (U.S. Aug. 20, 2014).

immense import."[35]  Further, the stays suspended the effect of lower court decisions that affected the general populations of Utah and Virginia.  The Court was not presented with particularized showings of irreparable harm, as is the case here.  Defendants' argument based on the three stays issued by the Supreme Court is not persuasive.

### 2.    Financial harm

At a more prosaic level, McQuire argues that if his marriage is not recognized now he will lose significant financial benefits.  In particular, if his name does not appear on Martinez's death certificate, McQuire will be unable to succeed to Martinez's much more substantial social security and Veteran's benefits.[36]  McQuire is in poor health and unable to work.  By succeeding to Martinez's benefits, McQuire would have a monthly income in excess of $4,000.  Without those benefits, his income would be only a bit over $1,300.  Given that McQuire's monthly mortgage payment is about $725, the court accepts as true that without Martinez's benefits, McQuire will be unable to keep his home.  Defendants contend that the monetary harm urged by McQuire is illusory because federal law would not allow him to succeed to either Martinez's social security benefits or his Veterans benefits.[37]  The court agrees.

---

[35]*Windsor*, 133 S.Ct. at 2692.

[36]Doc. 66 at 5 ¶ 14.  The substantial roadblocks standing between McQuire and the enhanced benefits to which he would be entitled if recognized as Martinez's spouse are explained in the memorandum supporting his motion.  Doc. 64 at pp. 13–15.  *See also Baskin*, 2014 WL 4359059 at *6 (describing the catalog of benefits denied to same-sex couples whose marriages are not officially recognized).

[37]Doc. 70 at 4–5.

Defendants cite 20 C.F.R. § 404.335(a)(1) to support the argument that because the McQuire/Martinez marriage license was obtained (and therefore the marriage was performed) less than nine months prior to Martinez's death, McQuire is not entitled to succeed to Martinez's social security benefits.  The marriage took place July of 2014.[38] Martinez died on August 28, 2014.[39]  While the regulation includes four situations in which a widow married less than 9 months prior to the death may still receive benefits,[40] none of those exceptions applies here.  The court concludes that regardless of what is said on Martinez's death certificate, McQuire will be unable to succeed to his social security benefits.

Defendants cite 38 U.S.C. § 1304 to support their argument that McQuire cannot obtain enhanced Veterans benefits as a result of Martinez's death.  As pertinent here, the provision which controls provides that to obtain benefits, the surviving spouse must have been married to the deceased veteran for a period of "one year or more."[41] McQuire was married to Martinez for less than a year, so he is not qualified to obtain any Veteran's benefits as a result of Martinez's death.

---

[38]Doc. 66 at 2–3 ¶ 5.

[39]*Id.* at 3 ¶ 9.

[40]20 C.F.C. § 404.335(a)(2).

[41]38 U.S.C. § 1304(2).

### 3.    Harm caused by the deprivation of a constitutional right

Finally, McQuire argues that because the harm of which he complains flows from a violation of his constitutional rights, that fact alone suffices to show irreparable harm. The Ninth Circuit has said that "[t]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"[42]

Defendants do not dispute that deprivation of a constitutional right is in-and-of-itself an irreparable harm.  Instead, they contend that the Arizona marriage laws do not violate the Fourteenth Amendment.  However, as discussed above, for purpose of the pending motion that contention fails in light of the substantial case law which contravenes defendants' position.[43]

In summary, the court agrees with defendants that McQuire has not shown irreparable harm based on the financial consequences of not recognizing his marriage to Martinez.  Nevertheless, on the basis of the loss of dignity and status coming in the midst of an elderly man's personal grief and on the fact that deprivation of a constitutional right constitutes irreparable harm, the court holds that McQuire has shown the requisite irreparable harm.

### D.  Balance of the Equities

On one side of the scale rest McQuire's loss of dignity and the irreparable harm to him caused by denial of his constitutional rights.  On the other side, there is the fact recognized by the Ninth Circuit that whenever a state law is enjoined, the state and its

---

[42]*Planned Parenthood Arizona, Inc. v. Humble*, 753 F.3d 905, 911 (9th Cir. 2014) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir.2012)).

[43]Doc. 70 at 14–15.

people also suffer an irreparable injury.[44]  It is to be noted that McQuire seeks relief that would apply only to him and not to the other plaintiffs.  This limitation substantially reduces the reach and impact of the injunctive relief he seeks.  Because McQuire's irreparable harm inheres in a claimed violation of the Constitution—a violation which he is very likely to establish for the reasons set out in subsection B. above—and because the injunctive relief sought is limited to a single individual, it cannot be said that the balance of the equities favors defendants.  In these circumstances, the court concludes that the balance of equities is consistent with issuance of an injunction limited in scope to McQuire's situation.

**E.  Public Interest**

The public has an important interest in the faithful discharge of duties imposed on Arizona's public officials by Arizona law.  The public also has an important interest in those same officials' compliance with the highest law of the land, the United States Constitution.  Where discharging state law runs afoul of the United States Constitution, the interest of the public necessarily lies in compliance with the higher law.

The court has not yet decided whether there is a conflict between Arizona law and the Constitution, but the court has decided that it is probable that there is such a conflict so that Arizona will be required to permit same-sex marriages.  Thus, it is probable that the public interest would be advanced if the requested narrowly-limited injunctive relief is awarded.  Conversely, it is probable that the public interest would be harmed if no such relief were provided.

---

[44]*Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997).

-13-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.  CONCLUSION AND ORDER

For the reasons above, McQuire's motion at docket 64 is **GRANTED,** and

**IT IS ORDERED**:

1.  As to plaintiff Fred McQuire only, Arizona officials receiving notice of this order are TEMPORARILY RESTRAINED from enforcing § 1 of Article 30 of the Arizona Constitution, A.R.S. § 25-101(C), A.R.S. § 25-112(A), and any other Arizona law against recognition of the marriage of Fred McQuire to George Martinez; and

2.  Defendant Will Humble, in his capacity as Director of the Arizona Department of Health Services, and his agents shall promptly prepare, issue, and accept a death certificate for George Martinez which records his marital status as "married" and his surviving spouse as Fred McQuire.

DATED this 12th day of September 2014.


_____
/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT COURT